UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD NEWBERNE,

            Plaintiff,

v.

INTEL ADVANTAGE, LLC,
INTEL ADVANTAGE II, LIMITED,
BRANCH CAPITAL INVESTMENTS LLC,
LAKELAND CAPITAL, LLC,
INTEL LOGISTICS, LLC,
ADVANCE INTEL SERVICES LLC,
PATRICE NICOLE BRANCH,
ANTHONY CARLOS ALLEN II,
DARREN LEON ABRAMS JR.,
CHAUNCEY HENRI THOMPSON,
SUPERIOR CAPITAL LLC,
AKELA DONYELL BRANCH,
MELISA ANN MUMPOWER,
TERESA RENEE MCCALISTER,
CHRISTOPHER JEROME ROBERTS, and
CHAUNCEY INVESTMENTS LLC,

            Defendants.

_____/

Case No. 1:20-cv-783

HON. HALA Y. JARBOU

FIRST AMENDED COMPLAINT

I.   **Introduction**

1.   Plaintiff is a victim of credit identity theft, whose stolen personal and financial

information was used to create a counterfeit credit card account and fake debt. Defendants are

debt collectors and credit identity thieves who acquired and used the stolen information and

counterfeit account to contact and falsely threaten plaintiff with litigation, prosecution and other

adverse consequences, and extort the payment of money from plaintiff.

1

2.      Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.,* and Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721

*et seq*.

3.      Defendants, along with other entities and individuals to be identified in discovery,

are involved in a large, elaborate, and ongoing scheme to contact consumers across the country

and falsely threaten litigation, prosecution and other adverse consequences unless the consumers

pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts.

Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4.      These schemes are epidemic and are operated by thousands of entities located in

and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York,

Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5.      On November 4, 2015, the Federal Trade Commission and other law enforcement

authorities around the country announced the first coordinated federal-state enforcement

initiative targeting deceptive and abusive debt collection practices. The "Operation Collection

Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and

local law enforcement authorities against collectors who use illegal tactics such as harassing

phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets

debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do

not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

6.      Even more recently, the federal government has begun to criminally indict

individuals involved in the type of scam that is described in this complaint. See, for example, the

forty-one count indictment filed on March 3, 2016 by the United States of America against Alan

Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint. See also, Federal Trade Commission v. National Landmark Logistics, LLC et al., U.S. District Court, District of South Carolina, Rock Hill Division, Case No. 0:20-cv-02592-JMC, which described the same type of scam that is described in this complaint.

7.     The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information.

## II.     Jurisdiction

8.     The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331.

## III.     Parties

9.     Plaintiff Donald Newberne is an adult, natural person. Mr. Newberne is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Mr. Newberne is a "person" as the term is defined and used in the DPPA.

3

10.    Defendant Intel Advantage, LLC ("Intel") is a North Carolina limited liability company, FEIN: 47-423xxxx, registered June 25, 2015. The Intel Annual Report filed June 29, 2020 states that Intel is a debt collection "Call Center," doing business at 5624 Executive Center Drive, Suite 220, Charlotte, North Carolina 28212, telephone number 704-244-1032, that the president and registered agent is defendant Patrice Nicole Branch, 7209 E. WT Harris Boulevard, Suite J-112, Charlotte, North Carolina 28227 (a private mailbox (No. 112) rented from Felicitas Corporation, doing business as The UPS Store No. 1089), and that Ms. Branch resides at 5211 Downing Creek Drive, Charlotte, North Carolina 28269. The immediately prior Intel Annual Report filed April 26, 2017 states that Intel operated its debt collection "Call Center" at 5624 Executive Center Drive, Suite *216*, Charlotte, North Carolina 28212. Intel currently operates at the far end on the second floor of a small office building at 5237 Albemarle Road, Suites 211 and 213, Charlotte, North Carolina 28212. Intel uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Intel regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Intel is a "debt collector" as the term is defined and used in the FDCPA.

11.    On November 20, 2015, defendant Patrice Nicole Branch signed a United States Postal Form 1583 and entered into a Mailbox Service Agreement with Felicitas Corporation, doing business as The UPS Store No. 1089, located at 7209 E. WT Harris Boulevard, Suite J, Charlotte, North Carolina 28227, for the rental of private mailbox No. 112, to receive mail in the name of defendant Intel Advantage, LLC, 5624 Executive Center Drive, Suite 216, Charlotte, North Carolina 28212, telephone number 704-244-1032. In connection with the transaction, Ms. Branch provided a photocopy of her drivers license issued by the State of North Carolina and her passport issued by the United States of America.

4

12.     Effective July 1, 2019, Intel became licensed (No. 112800) by the State of North Carolina s a "Collection Agency," claiming to be doing business at 7209 E. WT Harris Boulevard, Suite J-112, Charlotte, North Carolina 28227, but the address is merely a private mailbox (No. 112) rented from Felicitas Corporation, doing business as The UPS Store No. 1089. The contact person is Patrice Nicole Branch, President, 5237 Albemarle Road, Suite 213, Charlotte, North Carolina 28212, 919-230-9970, inteladvantage@gmail.com.

13.     Intel through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

14.     Defendants own, control and use a Merchant Account established in the name of "Intel Advantage," telephone number 919-230-9970, located in North Carolina, to receive credit card and debit card payments from their victims. Money deposited in the Merchant Account is shared among and distributed to the defendants named in this lawsuit, their employees and agents, and perhaps others. The application that was filed by defendants with the Acquiring Bank to create the Merchant Account, as well as the related monthly account statements and other account records, will need to be obtained from the Acquiring Bank via subpoena in discovery, so that plaintiff can identify the other entities that receive distributions of money from the Merchant Account and are involved in defendants' debt collection scam.

15.     Defendant Intel Advantage II, Limited ("Intel 2") is a North Carolina corporation, formed April 5, 2017. The Intel 2 Annual Report filed May 28, 2020 states that Intel 2 is a debt collection "Call Center," doing business at 5601 Executive Center Drive, Suite 220, Charlotte, North Carolina 28212, telephone numbers 561-246-4032 and 704-781-7586, that the president and registered agent is defendant Patrice Nicole Branch, 7209 E. WT Harris Boulevard, Suite J-112, Charlotte, North Carolina 28227 (a private mailbox (No. 112) rented from Felicitas

Corporation, doing business as The UPS Store No. 1089), and that Ms. Branch resides at 5211 Downing Creek Drive, Charlotte, North Carolina 28269. Intel 2 currently operates at the far end on the second floor of a small office building at 5237 Albemarle Road, Suites 211 and 213, Charlotte, North Carolina 28212. Intel 2 uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Intel regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Intel 2 is a "debt collector" as the term is defined and used in the FDCPA.

16. Intel 2 through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

17. Defendant Branch Capital Investments LLC ("BCI") is a Florida limited liability company formed on or about January 30, 2020. The BCI articles incorporation state that BCI does business at 123 SE 3rd Avenue, No. 265, Miami, Florida 33131, but the address is merely a private mailbox (No. 265) rented from Urban Mail & Business Center, Inc. BCI currently operates at the far end on the second floor of a small office building at 5237 Albemarle Road, Suites 211 and 213, Charlotte, North Carolina 28212. The president, secretary and registered agent of BCI is defendant Patrice Nicole Branch. BCI uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Intel regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. BCI is a "debt collector" as the term is defined and used in the FDCPA.

18. BCI through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

19. Defendant Lakeland Capital, LLC ("Lakeland") is a North Carolina limited liability company, registered July 30, 2019. The Lakeland articles of organization state that the

members of Lakeland are defendants Patrice Nicole Branch, 7209 E. WT Harris Boulevard, Suite J-112, Charlotte, North Carolina 28227, which is a private mailbox (No. 112) rented from Felicitas Corporation, doing business as The UPS Store No. 1089, and Anthony Carlos Allen II, 2116 Sandy Porter Road, Apartment 101, Charlotte, North Carolina 28273. Lakeland actually does business at 5820 E. WT Harris Boulevard, Suite 206, Charlotte, North Carolina 28215 and 3124 Milton Road, Suite 215, Charlotte, North Carolina 28215. The registered agent for Lakeland is LA Bookkeeping, LLC, 1801 East 5th Street, Suite 104, Charlotte, North Carolina 28204. Lakeland currently operates at the far end on the second floor of a small office building at 5237 Albemarle Road, Suites 211 and 213, Charlotte, North Carolina 28212.  Lakeland uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Lakeland regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Lakeland is a "debt collector" as the term is defined and used in the FDCPA.

20.     Defendants use a MoneyGram account (No. 18852) established in the name of Lakeland Capital, LLC, through which defendants operate their credit identity theft and debt collection scam and obtain money paid by consumers defrauded by defendants. According to MoneyGram, defendants' business address associated with the account is 3124 Milton Road, Suite 215, Charlotte, North Carolina 28215, which is the same address used by defendants when operating their scam under the name BCN Call Center Inc.

21.     Lakeland through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

22.     Defendant Intel Logistics, LLC ("Intel Logistics") is a North Carolina limited liability company, registered June 13, 2018. The Intel Logistics articles of organization state that

7

the principal office address is 37 Union Street, Suite B1, Concord, North Carolina 28025,

telephone number 704-550-4323, that the mailing address is 349 Copperfield Boulevard, Suite L,

#331, Concord, North Carolina 28025, which is a private mailbox (No. 331) rented from The

UPS Store No. 2767, and that the member is defendant Darren Leon Abrams Jr. The registered

agent for Intel Logistics is LA Bookkeeping, LLC, 1801 East 5th Street, Suite 104, Charlotte,

North Carolina 28204. Intel Logistics uses interstate commerce and the mails in a business the

principal purpose of which is the collection of debts. Intel Logistics regularly collects or attempts

to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Intel

Logistics is a "debt collector" as the term is defined and used in the FDCPA.

23.     Intel Logistics through its employees and agents directly and indirectly

participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this

complaint.

24.     Defendant Advance Intel Services LLC ("Advance Intel") is a North Carolina

limited liability company, registered September 24, 2019. The Advance Intel annual report filed

April 9, 2020 states that Advance Intel is a debt collection "Call Center," telephone number 704-

907-3246, with its principal office address at 1802 Damascus Street, Suite 331, Charlotte, North

Carolina 28213, which is merely a private mailbox (No. 331) rented from The UPS Store No.

2767, and that the member is defendant Chauncey Henri Thompson. The registered agent for

Intel Logistics is LA Bookkeeping, LLC, 1801 East 5th Street, Suite 104, Charlotte, North

Carolina 28204. Intel Logistics uses interstate commerce and the mails in a business the principal

purpose of which is the collection of debts. Intel Logistics regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Intel

Logistics is a "debt collector" as the term is defined and used in the FDCPA.

25.     Advance Intel through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

26.     Defendant Superior Capital LLC ("Superior") is a North Carolina limited liability company, registered October 1, 2020. Superior currently operates at the far end on the second floor of a small office building at 5237 Albemarle Road, Suites 211 and 213, Charlotte, North Carolina 28212. The Superior articles of organization state that the member and registered agent for Superior if defendant Akela Donyell Branch, 212 East Park Avenue, Albemarle, North Carolina 28001. Superior uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Superior regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Superior is a "debt collector" as the term is defined and used in the FDCPA.

27.     Superior through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

28.     Defendants Intel Advantage, LLC; Intel Advantage II, Limited; Branch Capital Investments LLC, Lakeland Capital, LLC; Intel Logistics, LLC; Advance Intel Services LLC; Superior Capital LLC; and Chauncey Investments LLC, are collectively referred to as the "Corporate Defendants" in this complaint.

29.     Defendant Patrice Nicole Branch is a natural person, age 33, until recently residing at 5211 Downing Creek Drive, Charlotte, North Carolina 28269. Ms. Branch also has resided at 212 E. Park Avenue, Albemarle, North Carolina 28001, which is a residential home

owned by Ms. Branch's parents, Steven A. Branch and Kesha B. Branch. Ms. Branch is the sister of defendant Akela Donyell Branch. Ms. Branch uses multiple telephone numbers to conduct defendants' credit identity theft and debt collection scam, including: 704-244-1032; and 704-781-7586. Ms. Branch uses the email addresses patrice28001@gmail.com and patrice@inteladvantagegroup.com to conduct defendants' credit identity theft and debt collection scam. Ms. Branch is an owner, officer, director, manager, employee and agent of Intel, Intel 2, BCI, Lakeland and Superior. Ms. Branch uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Branch regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Branch is a "debt collector" as the term is defined and used in the FDCPA.

30.     On October 31, 2017, Patrice Nicole Branch anonymously registered through Google LLC, the internet domain www.inteladvantagegroup.com. Ms. Branch and other defendants, their employees and agents, use the domain to communicate by email with multiple addresses, including patrice@inteladvantagegroup.com.

31.     Patrice Nicole Branch (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Intel, Intel 2, Lakeland and Superior, (c) oversaw the application of the collection policies and procedures used by Intel, Intel 2, BCI, Lakeland and Superior, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr.

Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

32.    Patrice Nicole Branch directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

33.    Defendant Akela Donyell Branch is a natural person, age 24, purportedly residing at 212 E. Park Avenue, Albemarle, North Carolina 28001, which is a residential home owned by Ms. Branch's parents, Steven A. Branch and Kesha B. Branch. Ms. Branch is the sister of defendant Patrice Nicole Branch. Ms. Branch is an owner, officer, director, manager, employee and agent of Intel, Intel 2, BCI, Lakeland and Superior. Ms. Branch uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Branch regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Branch is a "debt collector" as the term is defined and used in the FDCPA.

34.    Akela Donyell Branch (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Intel, Intel 2, Lakeland and Superior, (c) oversaw the application of the collection policies and procedures used by Intel, Intel 2, BCI, Lakeland and Superior, and their employees

and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the

Corporate Defendants and their employees and agents, to collect debts from consumers,

including the tactics and scripts that were used to attempt to collect an alleged debt from Mr.

Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and

procedures used by the Corporate Defendants and their employees and agents, in connection with

their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated

in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their

employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this

complaint.

35.     Akela Donyell Branch directly and indirectly participated in the efforts to collect

an alleged debt from Mr. Newberne that are described in this complaint.

36.     Defendant Melisa Ann Mumpower, also known as Melissa Ann Mumpower, is a

natural person, age 33, purportedly residing at 6808 Potter Road, Matthews, North Carolina

28104. Ms. Mumpower is a manager, employee and agent of Intel, Intel 2, BCI, Lakeland and

Superior. Ms. Mumpower uses interstate commerce and the mails in a business the principal

purpose of which is the collection of debts. Ms. Mumpower regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms.

Mumpower is a "debt collector" as the term is defined and used in the FDCPA.

37.     Ms. Mumpower (a) created the collection policies and procedures used by the

Corporate Defendants and their employees and agents, in connection with their common efforts

to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of

Intel, Intel 2, Lakeland and Superior, (c) oversaw the application of the collection policies and

12

procedures used by Intel, Intel 2, BCI, Lakeland and Superior, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

38.     Ms. Mumpower directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

39.     Defendant Teresa Renee McCalister is a natural person, age 47, purportedly residing at 8406 Strathburn Court, Apartment G, Huntersville, North Carolina 28076. Ms. McCalister previously resided at 8920 Pinnacle Cross Drive, Apartment 5, Huntersville, North Carolina 28078, until she was evicted. Ms. McCalister has an extensive criminal history, including multiple incidents involving larceny and writing bad checks. Ms. McCalister is a manager, employee and agent of Intel, Intel 2, BCI, Lakeland and Superior. Ms. McCalister uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. McCalister regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. McCalister is a "debt collector" as the term is defined and used in the FDCPA.

40.     Ms. McCalister (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Intel, Intel 2, Lakeland and Superior, (c) oversaw the application of the collection policies and procedures used by Intel, Intel 2, BCI, Lakeland and Superior, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

41.     Ms. McCalister directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

42.     Non-party TRM Taxes and Consulting, LLC ("TRM") is an active North Carolina limited liability company, registered September 2, 2020, with a member being defendant Teresa Renee McCalister, telephone number 704-526-9256.

43.     Defendant Christopher Jerome Roberts is a natural person, age 49, purportedly residing at 314 West Timberland Drive, Grover, North Carolina 28073. Mr. Roberts is an employee and agent of Intel, Intel 2, BCI, Lakeland and Superior. Mr. Roberts uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Roberts regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Roberts is a "debt collector" as the term is defined and used in the FDCPA.

44.     Mr. Roberts (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Intel, Intel 2, Lakeland and Superior, (c) oversaw the application of the collection policies and procedures used by Intel, Intel 2, BCI, Lakeland and Superior, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

45.     Mr. Roberts directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

46.     On October 12, 2020, defendants created a Facebook page for "Intel Advantage" at https://www.facebook.com/Intel-Advantage-112140543998502/. The page describes Intel

Advantage as a "Collection Agency Call Center" in Charlotte, North Carolina. The page provides the contact email address patrice@inteladvantagegroup.com (an email address for defendant Patrice Nicole Branch), and the contact telephone number 704-781-7586 (a telephone number registered to defendant Teresa Renee McCalister through Bandwidth.com CLEC, LLC - NC).

47.     Non-party SoDiva Hair LLC is a North Carolina limited liability company, formed February 2, 2019, and supposedly doing business at 12007 Fox Glen Road, Charlotte, North Carolina 28269. The articles of organization for SoDiva Hair LLC name defendant Patricia Nicole Branch and non-party Shannondale Page as members. It will need to be determined in discovery whether SoDiva Hair LLC participated in any way in defendants' efforts to collect an alleged debt from Mr. Newberne that are described in this complaint or was otherwise used to launder money extorted from defendants' victims.

48.     Defendant Anthony Carlos Allen II is a natural person, age 29, purportedly residing at 8934 Lenox Pointe Drive, Apartment 307, Charlotte, North Carolina 28273. Mr. Allen uses multiple email addresses to conduct defendants' credit identity theft and debt collection scam, including: anthonyallen1991@yahoo.com. Mr. Allen is an owner, officer, director, manager, employee and agent of Lakeland. Mr. Allen uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Allen regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Allen is a "debt collector" as the term is defined and used in the FDCPA.

49.     Mr. Allen (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Lakeland,

16

(c) oversaw the application of the collection policies and procedures used by Lakeland and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

50.     Mr. Allen directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

51.     Defendant Darren Leon Abrams Jr., also known as Darren L. Muhammad, is a natural person, age 43, purportedly residing at 2407 Radrick Lane, Charlotte, North Carolina 28262. Mr. Abrams uses multiple telephone numbers to conduct defendants' credit identity theft and debt collection scam, including: 704-208-0676. Mr. Abrams uses multiple email addresses to conduct defendants' credit identity theft and debt collection scam, including dabramsjr@yahoo.com. Mr. Abrams is an owner, officer, director, manager, employee and agent of Intel Logistics. Mr. Abrams uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Abrams regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Abrams is a "debt collector" as the term is defined and used in the FDCPA.

52.     Mr. Abrams (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Intel Logistics, (c) oversaw the application of the collection policies and procedures used by Intel Logistics and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

53.     Mr. Abrams directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

54.     Defendant Chauncey Henri Thompson, also known as Chauncey "Season" Thompson, is a natural person, age 45, purportedly residing at 1802 Damascus Street, Charlotte, North Carolina 28213. Mr. Thompson uses multiple telephone numbers to conduct defendants' credit identity theft and debt collection scam, including: 704-907-3246. Mr. Thompson uses multiple email addresses to conduct defendants' credit identity theft and debt collection scam, including: chaunceythompson32@gmail.com. Mr. Thompson is an owner, officer, director, manager, employee and agent of Advance Intel. Mr. Thompson uses interstate commerce and the

18

mails in a business the principal purpose of which is the collection of debts. Mr. Thompson regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Thompson is a "debt collector" as the term is defined and used in the FDCPA.

55.     Mr. Thompson (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Advance Intel, (c) oversaw the application of the collection policies and procedures used by Advance Intel and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

56.     Mr. Thompson directly and indirectly participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

57.     Chauncey Investments LLC ("Chauncey Investments") is a North Carolina limited liability company, registered May 6, 2014, with the sole member being defendant Chauncey Henri Thompson, telephone number 704-907-3246. The registered agent for Chauncey

Investments is defendant Chauncey Henri Thompson, 1802 Damascus Street, Charlotte, North

Carolina 28213. Chauncey Investments uses interstate commerce and the mails in a business the

principal purpose of which is the collection of debts. Chauncey Investments regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. Chauncey Investments is a "debt collector" as the term is defined and used in the

FDCPA.

58.     Chauncey Investments through its employees and agents directly and indirectly

participated in the efforts to collect an alleged debt from Mr. Newberne that are described in this

complaint.

59.     Defendants Darren Leon Abrams Jr. and Chauncey Henri Thompson, along with

non-party Joel Christopher Williams, over a period of years, have used a series of multiple, now

defunct entities, to conduct their credit identity theft and debt collection scam, including:

a)      BCNSC, Inc., a South Carolina corporation, registered August 26, 2013,

claiming to be doing business at 1750 Highway 160 West, Suite 101-233,

Fort Mill, South Carolina 29708, but that address was merely a private

mail box rented by defendants from The UPS Store # 4939. BCNSC, Inc.

was administratively dissolved in May of 2015 for failure to file annual

reports.

b)      BCN Incorporated, a New York corporation, formed September 24, 2002,

doing business at 5501 Executive Center Drive, Suite 229, Charlotte,

North Carolina 28212.

c)      BCN Call Center Inc., a North Carolina limited liability company, FEIN

26-400xxxx, telephone number 704-208-0676, registered agent Darren

Leon Abrams Jr., doing business at 5820 E. WT Harris Boulevard, Suite

215, Charlotte, North Carolina 28215, and 3124 Milton Road, Suite 215,

Charlotte, North Carolina 28215 (the same address currently used by

defendant Lakeland Capital, LLC for defendants' MoneyGram account.

d)     Lakeside Management Group LLC, a North Carolina limited liability

company, registered December 29, 2015, members Darren Leon Abrams

Jr. and Chauncey Henri Thompson, telephone numbers 704-900-5017

(registered to Tanya Danielle Abrams, also known as Tanya Danielle

Jackson) and 919-533-4775 (also used by BCN Call Center Inc.).

e)     Intel Payment Processing Solutions, LLC, a North Carolina limited

liability company, registered July 26, 2017, member Darren Leon Abrams

Jr., claiming to be doing business at 349 Copperfield Boulevard, Suite L,

#331, Concord, North Carolina 28025, which is the same private mailbox

(No. 331) rented from The UPS Store No. 2767, and currently being used

by defendant Intel Logistics, LLC.

f)     Building Credibility Nationally Financial Inc., doing business as BCN

Financial, a North Carolina corporation, incorporated July 31, 2006. The

articles of incorporation state that the President of the company was Tanya

Danielle Abrams, also known as Tanya Danielle Jackson, the wife of

defendant Darren Leon Abrams Jr.

60.    The business model used by Mr. Abrams and Mr. Thompson is to: (a) acquire

portfolios of counterfeit consumer debt, usually payday loans, at a cost of less than a penny on the dollar, (b) artificially inflate the amount of the alleged debt, and (c) attempt to collect the inflated, counterfeit debts through extortionate telephone calls, made from multiple call centers that are set up and controlled by defendants. In efforts to attempt to shield themselves from liability, defendants have set up a series of limited liability companies that are used to give the appearance that someone other than defendants are involved in the unlawful debt collection efforts, and to simply default when sued. Defendants provide the limited liability companies with leased office space, computers and other office equipment, telecommunications equipment and telephone service, consumer account information, and training to carry out defendants' unlawful debt collection scheme. In return, the limited liability companies contact consumers, coerce the payment of money, and attempt to provide cover for defendants in the event a lawsuit is filed or the government launches an investigation into defendants' extortionate scheme.

61.     Defendants and their employees and agents currently use multiple names, some registered, some not registered, and some defunct, to conduct their unlawful debt collection scheme, including: CRG; CRG Litigations; Choice Recovery Group; Choice Solutions Group; Resolve Care; National Information Center; Processing Division; In House Processing; In House Recovery; and Washington Recovery Solutions.

62.     Defendants and their its employees and agents use multiple telephone numbers when conducting their credit identity theft and debt collection scam, currently including: 678-250-5331; 888-674-7142; 901-866-5971; 904-512-0586; 912-809-6002; 919-230-9970; and 989-372-9176.

63.     Plaintiff is proceeding against defendants collectively under a common enterprise

22

theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

64.     All defendants are intricately bound together and combine their efforts in a joint and common enterprise, using concerted efforts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally for the unlawful acts of each defendant.

65.     Defendants operate as a single entity, commonly owned, operated and managed, operating from shared office space, sharing the same staff, equipment, supplies and telephonic services, and commingling revenue, expenses and payroll.

66.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

67.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

68.     Sometime prior to January 2019, plaintiff Donald Newberne's private, personal and financial information, including Mr. Newberne's Social Security Number, date of birth,

residential address, telephone numbers, and banking information, was compromised, stolen and unlawfully used to create a counterfeit MasterCard credit card account, No. 5440455012735802, allegedly issued by either Barclays Bank or Citibank, along with a related, counterfeit and allegedly unpaid debt.

69.     The perpetrators included Mr. Newberne's counterfeit account in multiple portfolios containing thousands of other counterfeit credit card accounts, and then sold the portfolios to multiple criminal enterprises across the country, to be used to contact and threaten consumers with litigation, prosecution and other adverse consequences, in efforts to extort the payment of money from the identity theft victims.

70.     Mr. Newberne denies owing any money to Barclays Bank, Citibank, or any other entity in connection with the account.

71.     A Bank Identification Number or "BIN" is the initial four to six numbers that appear on a credit card account. The BIN is a part of a numbering system developed by the American National Standards Institute to uniquely identify the financial institution that issues a specific credit card.

72.     According to Barclays Bank, Mr. Newberne has never had a credit card account with Barclays Bank or any affiliated entity.

73.     According to Citibank, Mr. Newberne has never had a credit card account with Citibank or any affiliated entity.

74.     Moreover, the BIN (544045) for Mr. Newberne's counterfeit account is the BIN for Platinum MasterCard credit cards, issued by Capital One Bank (USA) N.A.

75.     According to Capital One Bank (USA) N.A., Mr. Newberne has never had a credit

card account with Capital One Bank (USA) N.A.

76.     According to Capital One Bank (USA) N.A., Mr. Newberne's supposed credit

card account, Account No. 5440455012735802, is counterfeit.

77.     In 2019, the defendants named in this complaint somehow acquired a portfolio of

counterfeit accounts that included Mr. Newberne's counterfeit account, along with Mr.

Newberne's stolen personal and financial information.

78.     On July 1, 2019 at approximately 11:23 a.m., defendants' employee and agent

who identified herself Kathy Moore, a mediator with CRG Litigations, also known as CRG , also

known as Choice Recovery Group, at telephone numbers 678-250-5331 and 888-674-7142,

placed a call to Mr. Newberne, and in the ensuing conversation, made the following

representations:

    a)    Mr. Newberne owed a balance of $757.41 to Barclays Bank in connection with Account No. 5440455012735802;

    b)    Barclays Bank was the "Client" of CRG;

    c)    Mr. Newberne's "Case Number" was WEM44783;

    d)    CRG is a law firm retained by Barclays Bank to file a lawsuit against Mr. Newberne;

    e)    Mr. Newberne was in litigation;

    f)    Two complaints had been filed against Mr. Newberne, a civil action for breach of contract, and a criminal action for "malicious intent to defraud a financial institution."

    g)    Mr. Newberne's name had been entered into the "State Locator System"

and a process server was scheduled to be dispatched to locate and serve
Mr. Newberne at his residence or place of employment with a summons to
appear in court.

h)    Mr. Newberne could avoid the civil litigation and prosecution by paying
$300.00 to defendants.

i)    Defendants' offer was good for only forty-eight hours.

j)    If Mr. Newberne did not accept the offer, a judgment would enter against
Mr. Newberne in the amount of $757.41, plus court costs and attorney fees
of approximately $3,300.00.

79.    In response to the above-described false threats of litigation, prosecution and other
adverse consequences, and in fear, Mr. Newberne agreed to pay defendants $300.00 by debit
card, according to the following schedule: $100.00 on July 5, 2019; $100.00 on August 5, 2019;
and $100.00 on September 5, 2019.

80.    On July 5, 2019, defendants caused $100.00 to be transferred from Mr.
Newberne's debit card account to defendants' merchant account established in the name "Intel
Advantage," telephone number 919-230-9970, located in North Carolina.

81.    On August 5, 2019, defendants caused $100.00 to be transferred from Mr.
Newberne's debit card account to defendants' merchant account established in the name "Intel
Advantage," telephone number 919-230-9970, located in North Carolina.

82.    In August of 2019, Mr. Newberne suspected that he may have been defrauded by
defendants and took steps to ensure that defendants could not take the September 5, 2019
payment from Mr. Newberne's debit card account.

83.     On September 5, 2019, defendants' employee and agent placed a call to Mr. Newberne's cellular telephone and left the following on Mr. Newberne's voice mail: "This message is for Donald Newberne. My name is [unintelligible] calling from the Pretrial Process Division of Choice Recovery Group calling on behalf of our client Barclays. We set up arrangements to close out the account. We received your DocuSign. Your payment declined on today, September 5th, in the amount of $100.00. You've been very consistent here with your payments, sir. We're not for sure if this was done by intention or accidental, but you are fully aware of the arrangement that was posted on a recorded line, which I would remind you is also pursuitable [sic]. Mr. Newberne you will need to contact our office directly to rectify this matter before we proceed against you. Please contact me at 989-372-9176. You can also reach me on the alternative number which is 678-250-5331. Reference your File Number WEM44783. You've been officially notified Mr. Newberne and we look forward to speaking with you as well to resolve this matter. You only have three payments left of $100.00. Let's go ahead and rectify it. Thank you."

84.     On September 19, 2019, defendants' employee and agent who identified herself Kathy Moore, a mediator with "CRG Litigations" at telephone numbers 901-866-5971, 678-250-5331 and 888-674-7142, made the following representations and threats in efforts to extort the payment of money from Mr. Newberne:

    a)     Mr. Newberne owed a balance of $557.41 to Barclays Bank in connection
           with Account No. 5440455012735802;

    b)     Barclays Bank was the "Client" of CRG;

    c)     Mr. Newberne's "Case Number" was WEM44783;

d)      CRG is a law firm retained by Barclays Bank to file a lawsuit against Mr. Newberne;

e)      Mr. Newberne was in litigation;

f)      Two complaints had been filed against Mr. Newberne, a civil action for breach of contract, and a criminal action for "malicious intent to defraud a financial institution."

g)      Mr. Newberne's name had been entered into the "State Locator System" and Ms. Moore was scheduling a process server to locate Mr. Newberne ad his residence or place of employment to have Mr. Newberne served with a summons to appear in court.

h)      Mr. Newberne had paid $200.00 to defendants, but failed to make his final payment of $100.00, and accordingly, Mr. Newberne's settlement was void.

i)      Mr. Newberne could avoid the civil litigation and prosecution by paying $557.41 to defendants.

j)      If Mr. Newberne did not pay $557.41 to defendants, then Mr. Newberne would also owe court costs and attorney fees which would run about $3,300.00.

k)      Defendants' offer was good for only forty-eight hours.

l)      If Mr. Newberne did not accept the offer, a judgment would enter against Mr. Newberne in the amount of $757.41, plus court costs and attorney fees of approximately $3,300.00.

85.     On September 19, 2019, defendants, using the name "Choice Solutions Group,

used the email address verification@crgresolutions.com to send an email through DocuSign to

Mr. Newberne. The email linked to a proposed letter agreement dated September 19, 2019 on the

letterhead of "Choice Recovery Group," with no listed business address, and a contact telephone

number 678-250-5331. The letter agreement stated that "Payments will be posted through Intel

Advantage." The email also linked to a document captioned "Authorization For Payment Form."

Mr. Newberne refused to sign either document. The email also linked to a DocuSign document

captioned "Certificate Of Completion" that identified the sender of the email as Choice Solutions

Group, 5601 Executive Center Drive, Suite 220, Charlotte, North Carolina 28262. The email also

linked to a DocuSign document captioned "Consumer Disclosure," that identified "Intel

Advantage II" as the sender of the email. A copy of the email and documents are attached to this

complaint as Exhibit A.

86.     On September 26, 2019, defendants' employee and agent placed a call to Mr.

Newberne's cellular telephone and left the following pre-recorded and computer-generated

message on Mr. Newberne's voice mail: "This imperative message is for Donald C. Newberne.

I'm contacting you from the Processing Department. I've received an order for you pertaining to

two pending matters. Unfortunately, because I am unable to reach you by phone, I may be

actively pursuing you at your place of employment and your residence. Donald C Newberne. You

have the right to contact the client to resolve your case file voluntarily, but do understand when

you are located you forfeit that right. Your case number is WEM44783 and you can reach their

office at 989-372-9176. Donald C Newberne, you have been notified."

87.     The above-described threats and representations made by defendants and

defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are counterfeit, time-barred, or not owed, and through the use of unlawfully obtained account and personal information.

88.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

89.     Defendants and their employees and agents falsely represented that Mr. Newberne owed money in connection with a counterfeit account.

90.     Defendants and their employees and agents falsely represented and inflated the amount of Mr. Newberne's alleged debt.

91.     Defendants and their employees and agents falsely represented that Mr. Newberne owed a debt that is not owed.

92.     Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

93.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Newberne's personal and financial information, in an effort to coerce the payment of money from Mr. Newberne.

94.     Defendants and their employees and agents falsely represented that they are a mediation firm.

95.     Defendants and their employees and agents falsely represented that they are

31

attorneys and a law firm.

96.     Defendants and their employees and agents falsely represented that they have a Legal Department.

97.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

98.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

99.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Newberne to collect the alleged debt.

100.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Newberne to collect the alleged debt.

101.     Defendants and their employees and agents falsely represented and falsely implied that defendants represent Barclays Bank.

102.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit had been filed by Barclays Bank against Mr. Newberne.

103.     Defendants and their employees and agents falsely represented that a process server was being dispatched in a matter hours to Mr. Newberne's residence and place of employment to serve Mr. Newberne with a summons and complaint that had been filed against Mr. Newberne in efforts to collect the alleged debt.

104.     Defendants and their employees and agents falsely represented that Mr. Newberne had committed fraud.

105.     Defendants and their employees and agents falsely represented that Mr. Newberne had defrauded a lending or financial institution.

106.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Newberne had committed a crime.

107.    Defendants and their employees and agents falsely implied that Mr. Newberne was going to be arrested and prosecuted unless Mr. Newberne paid money to defendants.

108.    Defendants and their employees and agents falsely represented and falsely implied that a judgment was going to entered against Mr. Newberne.

109.    Defendants and their employees and agents falsely represented that Mr. Newberne owed a debt that included court costs, filing fees and attorney fees.

110.    Defendants did not intend to file a lawsuit against Mr. Newberne in any court in efforts to collect the alleged debt.

111.    The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

112.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

113.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

114.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

115.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

33

116.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

117.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

118.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

119.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

120.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

121.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

122.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

123.     The FDCPA states that it is unlawful for a debt collector to communicate in a

communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

124.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

125.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

126.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

127.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

128.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

129.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

130.     Defendants and their employees and agents failed to timely send to Mr. Newberne a notice containing the information required by 15 U.S.C. § 1692g(a).

131.     Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful

35

debt collection practices that are described in this complaint.

132.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

133.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

134.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

135.    In connection with efforts to collect an alleged debt from Mr. Newberne, defendants obtained and used personal information regarding Mr. Newberne from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

136.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal

information.

137.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

138.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

139.    The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

140.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

141.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

142.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Newberne.

143.     Defendants used the database to obtain, disclose and use personal information regarding Mr. Newberne.

144.     Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Newberne that was derived from Mr. Newberne's motor vehicle record.

145.     Alternatively, the entity that obtained Mr. Newberne's personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Newberne that was derived from Mr. Newberne's motor vehicle record.

146.     It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

147.     Defendants knowingly obtained, disclosed and used Mr. Newberne's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

148.     No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Newberne's personal information obtained from the database.

149.     No defendant had Mr. Newberne's consent, permission, authorization or waiver to obtain Mr. Newberne's personal information from the database.

150.     A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

151.     The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

152.    Defendants intentionally and wilfully violated the DPPA.

153.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

154.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

155.    Plaintiff incorporates the foregoing paragraphs by reference.

156.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

39

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

157.    Plaintiff incorporates the foregoing paragraphs by reference.

158.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining or using plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

Dated: November 2, 2020                           /s/ Phillip C. Rogers
                                                  Phillip C. Rogers (P34356)
                                                  Attorney for Plaintiff
                                                  6140 28th Street SE, Suite 115
                                                  Grand Rapids, Michigan 49546-6938
                                                  (616) 776-1176
                                                  ConsumerLawyer@aol.com